# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JARDEN, LLC f/k/a and as successor by merger to JARDEN CORPORATION, | ) ) ) | C.A. No. N20C-03-112 AML CCLD |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| ACE AMERICAN INSURANCE COMPANY, ALLIED WORLD NATIONAL ASSURANCE COMPANY, BERKLEY INSURANCE COMPANY, ENDURANCE AMERICAN INSURANCE COMPANY, ILLINOIS NATIONAL INSURANCE COMPANY, NAVIGATORS INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) | TRIAL BY JURY OF TWELVE DEMANDED |
| Defendants. | ) | |

Submitted: April 20, 2021
Decided: July 30, 2021

## MEMORANDUM OPINION

### Upon Defendants' Motion to Dismiss: GRANTED

David Baldwin, Esquire of BERGER HARRIS Wilmington, Delaware, *Attorney for Plaintiff Jarden LLC*

Robert J. Katzenstein, Esquire of SMITH KATZENSTEIN & JENKINS LLP, Wilmington, Delaware, Michael R. Goodstein, Esquire of BAILEY CAVALIERI LLC, Columbus, Ohio, David H. Topol, Esquire, and Matthew W. Beato, Esquire, of WILEY REIN LLP, Washington, D.C., *Attorneys for Defendants ACE American Insurance Company and Navigators Insurance Company*

Marc S. Casarino, Esquire of WHITE & WILLIAMS LLP, Wilmington, Delaware, Maurice Pesso, Esquire, and William J. Brennan, Esquire of KENNEDYS CMK LLP, New York, New York, *Attorneys for Defendant Allied World National Assurance Company*

Joanna J. Cline, Esquire, Emily L. Wheatley, Esquire of TROUTMAN PEPPER HAMILTON SANDERS LLP, Wilmington, Delaware, Jennifer Mathis, Esquire of TROUTMAN PEPPER HAMILTON SANDERS LLP, San Francisco, California, and Brandon D. Almond, Esquire of TROUTMAN PEPPER HAMILTON SANDERS LLP, Washington, D.C., *Attorneys for Defendant Berkley Insurance Company*

Kurt M. Heyman, Esquire, Aaron M. Nelson, Esquire of HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware, Scott B. Schreiber, Esquire, William C. Perdue, Esquire of ARNOLD & PORTER KAYE SCHOLER LLP, Washington D.C., *Attorneys for Defendant Illinois National Insurance Company*

Carmella P. Keener, Esquire of COOCH AND TAYLOR, P.A., Wilmington, Delaware, Ronald P. Schiller, Esquire, and Daniel J. Layden, Esquire of HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER, Philadelphia, Pennsylvania, *Attorneys for Defendant Endurance Assurance Corporation as successor-in-interest to Endurance Reinsurance Corporation of America*

**LEGROW, J.**

The plaintiff, a Delaware corporation that was acquired in a merger in 2016, seeks insurance coverage for the defense costs and pre-judgment and post-judgment interest it incurred in connection with an appraisal proceeding filed by the plaintiff's dissenting stockholders after the merger. The insurance policies at issue provide a tower of corporate liability coverage for "Securities Claims" brought "for any Wrongful Acts" taking place before the Run-Off Date, which was the date the merger closed. Although the insurers concede the appraisal action was a "Securities Claim" under the terms of the policies, they argue the plaintiff's coverage claims must be dismissed because other language in the policy precludes coverage.

The pending motion to dismiss requires the Court to answer two questions. First, given the parties' agreement that the phrase "for a Wrongful Act" means that the claim at issue must seek redress or reprisal for an act, does an appraisal action seek redress for any corporate act? Second, if an appraisal action seeks redress or reprisal for an act of the merged corporation, is that act one that occurred before the merger closed. I conclude that (i) an appraisal action is a statutory proceeding that does not seek redress in response to any corporate act, and (ii) even if an appraisal action does arise from or seek redress for a corporate act, that act necessarily is the merger's effectuation, which did not occur before the Run-Off Date. Accordingly, the insurers' motion to dismiss is granted.

## BACKGROUND

Unless otherwise noted, the following facts are drawn from the Amended Complaint and the documents it incorporates by reference, drawing all reasonable inferences in the plaintiff's favor.

### A. The Merger

Jarden LLC, f/k/a and as successor by merger to Jarden Corporation ("Jarden"), is a Delaware limited liability company with its principal place of business in Florida. Jarden was a holding company whose portfolio included 120 consumer-product brands, including Coleman sporting goods, Crock-Pot appliances, Sunbeam, and Yankee Candle.[1] On December 13, 2015, Jarden entered into an Agreement and Plan of Merger (the "Merger Agreement") with Newell Rubbermaid, Inc. ("Newell"). The merger price included a combination of cash and Newell stock valued at $59.21 per share as of the closing date.[2]

Jarden filed a proxy statement with the Securities and Exchange Commission on March 18, 2016, which provided information about the proposed merger with Newell. The proxy statement also gave Jarden's stockholders notice that a special meeting would be held on April 15, 2016 at 8 a.m. EST to allow Jarden's

---

[1] Am. Compl. ¶ 15.
[2] *Id*. ¶ 1.

2

stockholders to vote on the proposed merger.[3]  Between April 7, 2016 and April 14, 2016, Cede & Co., nominee for the Depository Trust Company and the holder of record of the shares, delivered to Jarden several written appraisal demands on behalf of several Jarden stockholders (the "Appraisal Demands").  The Appraisal Demands were delivered to Jarden before the special meeting.  On April 15, 2016, a majority of Jarden's stockholders approved the proposed merger, and the merger closed that day.  As a result of the merger, Jarden became one of Newell's wholly owned subsidiaries.

## B. The Appraisal Action

After the merger closed, several Jarden stockholders who voted against the merger and submitted the Appraisal Demands filed appraisal petitions in the Delaware Court of Chancery under 8 *Del. C.* § 262.  The various appraisal actions later were consolidated and recaptioned *In re Appraisal of Jarden Corporation*, C.A. No 12456-VCS (the "Appraisal Action").  During discovery and trial, the appraisal petitioners alleged the sales process leading up to the merger was flawed and unfair to Jarden's stockholders.[4]  The Court of Chancery ultimately agreed with the

---

[3] *Id*. ¶¶ 1, 17; Jarden Corp., Schedule 14A Definitive Proxy Statement dtd Mar. 18, 2016, available at https://www.sec.gov/Archives/edgar (hereinafter cited as "Proxy Statement") at 61.  The Court may take judicial notice of the Proxy Statement, which is a publicly available document referenced in the Amended Complaint and not subject to reasonable dispute as to the matters referenced.  Am. Compl. ¶ 17; *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169 (Del. 2006); *In re Gardner Denver, Inc. S'holder Litig.*, 2014 WL 715705, at *2-4, n.21 (Del. Ch. Feb. 21, 2014).
[4] *Appraisal of Jarden Corp.*, 2019 WL 3244085, at *3 (Del. Ch. July 19, 2019).

petitioners' contention that the sales process was less-than-perfect, concluding that (i) Jarden's lead negotiator "got way out in front" of its board and financial advisors, (ii) there was no pre-signing or post-signing market check, and (iii) there were challenges associated with valuing the synergies arising from the deal.[5] For those reasons, the Court of Chancery ascribed little weight to the negotiated deal price for purposes of determining Jarden's fair value under Section 262.

After trial, the Court of Chancery concluded Jarden's fair value at the time of the merger was $48.31 per share, nearly $11 below the merger price.[6] The Court also held the petitioners were entitled to pre-judgment and post-judgment interest. The Court ordered Jarden to pay a judgment of $177,406,216.48, consisting of the fair value of the petitioners' shares plus interest.[7] Jarden paid the final judgment, and the Delaware Supreme Court affirmed the Court of Chancery's decision on July 9, 2020.[8]

### C. The Insurance Policies

The defendants in this action issued primary and/or excess executive and corporate liability insurance to Jarden for the period of April 12, 2015 to April 12, 2022. ACE American Insurance Company ("ACE") issued the primary policy (the

---

[5] *Id.*
[6] *Id.* at *2.
[7] Am. Compl. ¶ 26.
[8] *Id.* ¶ 27.

"Primary Policy"), and a tower of excess policies (the "Excess Policies" and collectively with the Primary Policy, the "D&O Policies") were issued by Allied World National Assurance Company ("Allied World"), Berkley Insurance Company ("Berkley"), Illinois National Insurance Company ("Illinois National"), Endurance Assurance Company ("Endurance"),[9] and Navigators Insurance Company "("Navigators" and collectively with ACE, Allied World, Berkley, Illinois National, and Endurance, the "Insurers"). The Excess Policies generally follow form to the Primary Policy, and there are no material differences between the Primary Policy and the Excess Policies for purposes of this coverage dispute.

Relevant to this litigation, the D&O Policies provide coverage for "Company Liability" as follows:

> The Insurer shall pay on behalf of the Company all Loss for which the Company, or the Successor Company, solely in its capacity as successor-in-interest to the Company, becomes legally obligated to pay by reason of a Securities Claim first made against the Company during the Run-Off Period, and reported to the Insurer pursuant to the terms of this Policy, for any Wrongful Acts taking place before the Run-Off Date. In no event shall there be any coverage under this Insuring Agreement for Wrongful Acts of the Successor Company, except as set forth in the Run-Off Exclusion.[10]

---

[9] The Amended Complaint identifies Endurance as Endurance American Insurance Company. The policy was issued by Endurance Reinsurance Corporation of America, which has since changed its name to Endurance Assurance Corporation. *See* Defs.' Opening Br. in Supp. of Mot. to Dismiss at 1, n.1.

[10] Am. Compl. Ex. 7, Endorsement 26. Unless otherwise noted, all citations to the D&O Policies are to the Primary Policy, which is attached as Exhibit 7 to the Amended Complaint.

Jarden and its subsidiaries are the "Company" under the terms of the D&O Policies. Those policies define a "Securities Claim" to include "any Claim, other than a civil, criminal, administrative or regulatory investigation of a Company, which, in whole or in part, is: [] brought by one or more securities holders of the Company, in their capacity as such, including derivative actions brought by one or more shareholders to enforce a right of the Company."[11] A "Claim" includes "a written demand for monetary damages or non-monetary or injunctive relief, [and] a civil . . . proceeding for monetary damages or non-monetary or injunctive relief, commenced by . . . service of a complaint or similar pleading . . . ."[12] The policies define "Wrongful Act" as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty, . . . actually or allegedly committed or attempted by . . . the Company."[13]

Under the terms of the policy, coverage is afforded for Securities Claims first made "during the Run-Off Period" for Wrongful Acts "taking place before the Run-Off Date."[14] The Run-Off Date was April 15, 2016, while the Run-Off Period was 12:01 a.m. on April 15, 2016 to 12:01 a.m. on April 15, 2022.[15]

---

[11] Am. Compl., Ex. 7, §II(O)(1).
[12] *Id*., Ex. 7, §II(B)(2).
[13] *Id*., Ex. 7, §II(Q)(2). This definition applies solely to a Securities Claim. *Id*.
[14] *Id*., Ex. 7, Endorsement 26.
[15] *Id*.

**D. This Coverage Action**

Jarden filed this action on March 12, 2020, seeking coverage for the interest award and defense costs that Jarden incurred in the Appraisal Action.[16] In its original complaint, Jarden claimed the Appraisal Action was a "Securities Claim" under the D&O Policies, relying in part on this Court's decision in *Solera Holdings, Inc. v. XL Specialty Insurance Co.* ("*Solera I*"),[17] which at that time was on appeal to the Delaware Supreme Court. The parties jointly moved to stay the proceedings in this case pending resolution of the *Solera I* appeal. On October 23, 2020, the Delaware Supreme Court reversed *Solera I*, holding that an appraisal action was not "for a violation of law" and therefore did not fit the definition of a "securities claim" under the policy at issue in that case ("*Solera II*").[18]

On December 10, 2020, Jarden filed its Amended Complaint in this action. Jarden's Amended Complaint includes claims for declaratory judgment and breach of contract relating to the Insurers' refusal to cover the defense costs and interest award incurred in the Appraisal Action. The Insurers moved to dismiss the Amended Complaint. The parties briefed and argued that motion, and the Court took the motion under advisement after oral argument.

---

[16] The D&O Policies define "Loss" as including "any award of pre-judgment and post-judgment interest" and "Defense Costs." Am. Compl. Ex. 7, §II(I). Jarden contends both the interest award and Jarden's defense costs constitute a "Loss" under the terms of the policy, but that issue is not before the Court for purposes of the present motion.

[17] 213 A.3d 1249 (Del. Super. Ct. 2019).

[18] *In re Solera Insur. Coverage Appeals*, 240 A.3d 1121 (Del. 2020)

7

## PARTIES' CONTENTIONS

The Insurers advance two arguments in favor of dismissal.[19] First, although the Insurers concede that the Appraisal Action is a "Securities Claim" under the D&O Policies at issue in this case, they contend no coverage was afforded under the policies because Insuring Agreement I.C. provides that every claim, including a Securities Claim, must be "for" a Wrongful Act. The Insurers argue this means that the Claim must "'seek redress in response to, or as requital of'" a Wrongful Act.[20] Because an appraisal action does not, under the Delaware Supreme Court's reasoning in *Solera II*, seek redress for any conduct by the insured, Defendants contend the Appraisal Action cannot be one "for" a Wrongful Act.

Second, the Insurers argue that, even if the Appraisal Action seeks redress in response to a Wrongful Act, any such act is not one that occurred "before the Run-Off Date," as required under Insuring Agreement I.C. The Insurers argue the only "Wrongful Act" for which an Appraisal Action arguably sought redress was the execution of the merger itself, which did not occur before the Run-Off Date.

Jarden responds that *Solera II* does not govern this case because the policy at issue in *Solera II* contained a different, narrower definition of "Securities Claim,"

---

[19] Defendants also argue the Appraisal Action was not a claim for an act "committed by Jarden," pointing out that the Appraisal Action alleged Newell paid less than fair value for the petitioners' shares and that Newell later paid the judgment entered by the Court, consistent with Section 262(i). The Court does not reach this alternative argument in light of its conclusion that dismissal is warranted for independent reasons.

[20] Defs.' Opening Br. 17-18.

and the Delaware Supreme Court in *Solera II* only addressed whether an appraisal action constitutes a claim involving a "violation of law." Jarden argues the Supreme Court's conclusion that an appraisal action is not a claim for a "violation of law" is materially different from the question of whether an appraisal action is "for a Wrongful Act." In support of this argument, Jarden relies on the D&O Policies' broad definition of the term Wrongful Act. As to the Insurers' argument that the Appraisal Action is not based on conduct occurring before the Run-Off Date, Jarden relies on the Appraisal Demands that were submitted to Jarden before the Run-Off Date, as well as the fact that the appraisal petitioners challenged various aspects of the pre-closing deal process.

## ANALYSIS

A claim must be dismissed under Superior Court Civil Rule 12(b)(6) if the complaint fails "to state a claim upon which relief can be granted."[21] Under this standard, the Court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any

---

[21] Del. Super. Ct. Civ. R. 12(b)(6).

reasonably conceivable set of circumstances.[22] The Court, however, must "ignore conclusory allegations that lack specific supporting factual allegations."[23]

Interpreting an unambiguous contract, including an insurance policy, is a question of law that appropriately may be resolved on the pleadings.[24] When a contract only is susceptible of one interpretation, and that interpretation effectively negates the claim as a matter of law, a motion to dismiss should be granted.[25]

The Delaware Supreme Court recently reaffirmed the settled principles of Delaware law governing interpretation of insurance contracts:

> Insurance contracts, like all contracts, 'are construed as a whole, to give effect to the intentions of the parties.' Proper interpretation of an insurance contract will not render any provision 'illusory or meaningless.' If the contract language is 'clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning.' Where the language is ambiguous, the contract is to 'be construed most strongly against the insurance company that drafted it.' A contract is not ambiguous simply because the parties do not agree on the proper construction. 'Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.'
>
> Insurance contracts should be interpreted as providing broad coverage to align with the insured's reasonable expectations. 'Generally, an insured's burden is to establish that a claim falls within the basic scope of coverage, while an insurer's burden is to establish that a claim is specifically excluded.' Courts will interpret exclusionary clauses with 'a strict and narrow construction . . . [and] give effect to such

---

[22] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 535 (Del. 2011); *Doe v. Cedar Academy*, 2010 WL 5825343, at *3 (Del. Super. Ct. Oct. 27, 2010).
[23] *Rammuno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998).
[24] *RSUI Indemnity Co. v. Murdock*, 248 A.3d 887, 905 (Del. 2021); *Vinton v. Grayson*, 189 A.3d 695, 699-700 (Del. Super. Ct. 2018).
[25] *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 614-15 (Del. 2003).

exclusionary language [only] where it is found to be 'specific,' 'clear,' 'plain,' 'conspicuous,' and 'not contrary to public policy.'[26]

**A. The Appraisal Action is not a claim "for a Wrongful Act."**

The Insurers first contend Jarden's coverage claims must be dismissed because the Appraisal Action was not a claim "for a Wrongful Act." Under the Primary Policy, the Insurers agreed to pay for Losses Jarden incurred by reason of a Securities Claim first made during the Run-Off Period "***for any Wrongful Acts***" taking place before the Run-Off Date.[27] Although the Insurers concede that the Appraisal Action was a "Securities Claim" under the terms of the D&O Policies, they argue it was not "for" a "Wrongful Act." Jarden disagrees, arguing the D&O Policies broadly define Wrongful Act to include, among other things, any "act . . . actually or allegedly committed or attempted by . . . the Company."[28]

Although the D&O Policies define "Wrongful Act" to include any "act" committed or attempted by Jarden, the Securities Claim also must be "for" that act. The Insurers argued in their briefs and at oral argument that in order for a claim to be "*for*" a wrongful act, it must "seek redress in response to, or as requital of," that act.[29] Jarden did not squarely address the meaning of "for" in its brief, but agreed at

---

[26] *Murdock*, 248 A.3d at 905-06 (internal citations omitted).
[27] Am. Compl. Ex. 7, Endorsement 26 (emphasis added).
[28] *Id*., Ex. 7, §II(Q)(2). This definition applies solely to a Securities Claim. *Id*.
[29] Defs.' Opening Br. 18 (citing *RSUI Indem. Co. v. Desai*, 2014 WL 4347821, at *4 (M.D. Fla. Sept. 2, 2014)); Defs.' Reply Br. 7-8.

oral argument that "for" as used in the D&O Policies has the meaning advocated by the Insurers.

That concession is fatal to Jarden's coverage claim. Even if, as Jarden argues, a "Wrongful Act" means any act Jarden committed, an appraisal action does not seek redress in response to, or as reprisal of, an act. Accordingly, giving the term "for" the meaning the parties jointly ascribe to it, there is no coverage under the D&O Policies.[30]

This conclusion is the logical extension of the Delaware Supreme Court's decision in *Solera II* and other cases interpreting Section 262. An appraisal claim purely is a creature of statute.[31] The appraisal statute imposes limited duties on the corporation, namely (i) providing notice to stockholders, (ii) keeping and supplying records of the number of shares not voted in favor of the merger and the number of holders of such shares, and (iii) filing with the Register in Chancery a verified petition listing the stockholders who demanded appraisal and did not later reach an agreement with the surviving corporation as to the value of their shares.[32] The

---

[30] Because the parties did not dispute the meaning of "for" in the D&O Policies, the Court was not called upon to interpret it. The parties have not cited, and the Court has not identified, any Delaware case directly addressing the meaning of "for" in this context. Given the parties' agreement that "for" means "seeking redress or reprisal of," the Court need not interpret the phrase, and simply can apply the parties' agreed-upon interpretation. Making an interpretive ruling that may have precedential value is better left to a court that has the benefit of the parties' adversarial presentations on the issue.

[31] *Dell, Inc. v. Magnetar Global Even Driven Master Fund Ltd.*, 177 A.3d 1, 20 (Del. 2017).

[32] 8 *Del. C.* § 262(d)-(f).

12

appraisal proceeding itself, however, is "neutral in nature" and requires the Court of Chancery to determine the fair value of the dissenting stockholder's shares.[33] Both sides bear the burden of proving their respective valuation positions by a preponderance of the evidence.[34]

Importantly, as the Delaware Supreme Court reemphasized in *Solera II*, an appraisal proceeding "does not involve any inquiry into claims of wrongdoing."[35] The only issue before the appraising court is the value of the dissenting stockholder's shares on the date of the merger.[36] In fact, it is possible for the Court of Chancery to conclude that the value of the petitioner's shares is *less* than the negotiated deal price.[37] That possibility actually transpired in this case. These features of appraisal

---

[33] *In re Solera Insur. Coverage Appeals*, 240 A.3d 1121, 1135-36 (Del. 2020).

[34] *M.G. Bancorp. Inc. v. Le Beau*, 737 A.2d 513, 520 (Del. 1999).

[35] *In re Solera Insur. Coverage Appeals*, 240 A.3d at 1136. The Delaware Supreme Court has held that the trial court should accord "considerable weight" to the deal price absent deficiencies in the deal process. *Verition P'rs Master Fund Ltd. v. Aruba Networks, Inc.*, 210 A.3d 128, 137-140 (Del. 2019).

[36] *In re Solera Insur. Coverage Appeals*, 240 A.3d at 1137. Jarden insists *Solera II* is not dispositive of the issues before this Court, or even helpful to the analysis, because *Solera II* involved an interpretation of the phrase "violation of law," not a "Wrongful Act." Although Jarden is correct that the *Solera II* Court was not interpreting the phrase "for a Wrongful Act," the Court's explanation and analysis of the purpose and scope of an appraisal action is relevant to, and in my view dispositive of, the question of whether an appraisal action seeks redress in response to, or as reprisal of, an "act" of the appraised corporation.

[37] *See* Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery*, § 9.11[d][1] at 9-273 (Citing cases and explaining that "[o]f the 71 post-*Weinberger* common stock appraisals decided through February 2018 in which the merger consideration was reflected in the record, only 20 have resulted in judicial appraisal values at or below the market price.").

confirm that an appraisal proceeding is not one that seeks redress or reprisal for any "act" of the insured corporation.

Jarden argues the D&O Policies' broad definition of Wrongful Act encompasses "not just the merger at issue in the Appraisal Action, but also the underlying complained-of process . . . ."[38] But the appraisal petitioners' challenges to the merger's negotiation or other aspects of the process leading up to the merger's effectuation does not change the above analysis. Although evidence of a flawed negotiation process generally is admissible in an appraisal proceeding, that evidence is relevant to what weight, if any, the Court accords the negotiated merger price.[39] An appraisal petitioner need not plead or establish a flawed process in order to seek appraisal. Instead, the admission of that evidence simply allows the appraisal petitioner to challenge the reliability of the negotiated deal price as indicative of fair value.[40]

Finally, the D&O Policies' inclusion of a "Merger Objection Claim" within the definition of a "Claim" or a "Securities Claim" does not change the analysis. Although an appraisal action may fit the definition of a Merger Objection Claim in the same way that it fits the definition of a Securities Claim, the D&O Policies' coverage nevertheless only applies to a claim "for" a Wrongful Act. In other words,

---

[38] Pl.'s Answering Br. at 18.
[39] *In re Solera Insur. Coverage Appeals*, 240 A.3d at 1138.
[40] *Id.*

14

the requirement that an action be "for" a Wrongful Act applies whether the claim is a Merger Objection Claim or any other type of Securities Claim, and the same analysis therefore applies and defeats coverage for the Appraisal Action.

### B. Even if the Appraisal Action was a claim "for" a Wrongful Act, it did not arise out of act committed before the Run-Off Date.

The Insurers separately argue that, even if the Appraisal Action was "for" a Wrongful Act, it was not for an act committed or attempted by Jarden before the April 15, 2016 Run-Off Date. The Insurers, citing *Solera II*, argue that the act that confers appraisal litigation rights is the execution of the merger, and since the merger did not close before the Run-Off Date, the Appraisal Action did not fall within the D&O Policies' coverage.[41] Jarden, on the other hand, argues the merger was announced in December 2015 and was explained in detail in the proxy statement filed in March 2016. Jarden maintains that the Appraisal Action was initiated by the Appraisal Demands, all of which were lodged before the Run-Off Date, and those demands were in response to the Merger Agreement, the proxy statement, and the merger price.[42] Jarden argues these pre-closing claims were based on flaws in the deal process and were sufficient to give rise to a claim under the D&O Policies. Jarden contends the Appraisal Demands were a "Claim" under the policies, and the

---

[41] Defs.' Opening Br. 21-22; Defs.' Reply Br. 17-18.
[42] Pl.'s Answering Br. 20-21.

legal process for the Appraisal Action began well in advance of the merger closing and the Run-Off Date.[43]

Jarden's argument is unavailing. Even if the Appraisal Demands were a "Claim" under the Policies,[44] the Appraisal Action was not for an act that occurred before the Run-Off Date. This conclusion is compelled by the simple fact that, without the merger's execution, no appraisal right exists. If the merger had not closed, none of the dissenting stockholders who submitted Appraisal Demands would have had standing to pursue appraisal.[45] Additionally, the Appraisal Action could not be filed until after the merger was executed.[46] And, the fair value ascribed to the shares was the fair value as of the merger's effective date.[47] Accordingly, if the Appraisal Action was for any act, the only act from which it arose or for which it sought redress was the merger's execution.

The Texas Court of Appeals reached the same conclusion in *Zale Corporation v. Berkley Insurance Co.*, a recent insurance coverage case in which the insured

---

[43] *Id*. at 22-23.
[44] The Insurers argue the Appraisal Demands were not a "claim" as the D&O Policies define that term. The Court need not reach that issue because, even if they were a "claim," which is unlikely, the demands were not for an act of the corporation taking place before the Run-Off Date.
[45] *See* 8 *Del. C.* § 262(a) (providing that a stockholder who holds stock on the date a demand is made and continuously holds the stock through the effective date of the merger is entitled to appraisal under the statute).
[46] 8 *Del. C.* § 262(e) (providing that a corporation or a stockholder who complies with Section 262(d) may commence an appraisal proceeding in the Court of Chancery "[w]ithin 120 days after the effective date of the merger or consolidation.").
[47] *In re Solera Insur. Coverage Appeals*, 240 A.3d at 1135

corporation sought coverage for a Delaware appraisal proceeding.[48]   The Texas appellate court reasoned that the policies at issue did not cover the appraisal action or the resulting settlement because the policies limited coverage to claims based on acts occurring before the merger date, and the "instrumental act that confers appraisal litigation rights is not the merger process but the execution of the merger."[49]   Although not binding on this Court, the *Zale* court's reasoning is persuasive and was cited with approval by the Delaware Supreme Court in *Solera II*.[50]

The fact that Jarden's dissenting shareholders lodged appraisal demands with the corporation before the Run-Off Date does not change the analysis.   Those appraisal demands statutorily were required in order to perfect the petitioners' appraisal rights, but the demands themselves were not acts of the corporation, and the Appraisal Action did not arise from the demands nor seek redress for the demands.   Similarly, as explained above, the fact that the appraisal petitioners challenged aspects of the merger negotiation process, which took place before the Run-Off Date, does not tie the Appraisal Action to an act committed before the Run-Off Date.   Those challenges to the deal process related to the weight the trial court gave to the negotiated deal price in determining fair value.   The Court's fair value

---

[48] *Zale Corp. v. Berkley Ins. Co.*, 2020 WL 4361942 (Tex. Ct. App. 2020).
[49] *Id*. at *6 (cited with approval in *In re Solera Insur. Coverage Appeals*, 240 A.3d at 1135, n. 90).
[50] *In re Solera Insur. Coverage Appeals*, 240 A.3d at 1135, n. 90.

award did not compensate the appraisal petitioners for any defects in the sale process, and the petitioners' standing to bring the Appraisal Action did not in any way depend on those flaws in the deal process.

## CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss the Amended Complaint is **GRANTED**. Because the pleading deficiencies are not ones that can be cured through further amendment to the complaint, this case is dismissed with prejudice.[51] **IT IS SO ORDERED.**

---

[51] *See Infomedia Grp., Inc. v. Orange Health Sols., Inc.*, 2020 WL 4384087, at * 10 (Del. Super. Ct. July 31, 2020); *Mooney v. E.I. du Pont de Nemours & Co.*, 2017 WL 5713308, at * 8 (Del. Super. Ct. Nov. 28, 2017); *aff'd* 192 A.3d 557 (Del. 2018) (check cite)